******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

*Syllabus*

The petitioner, who had been convicted on a guilty plea of the crime of risk
of injury to a child, sought a writ of habeas corpus, claiming that he
was denied his constitutional right to counsel free from conflicts of
interest and that his trial counsel provided ineffective assistance. Specifi-
cally, the petitioner claimed that his trial counsel had a financial incen-
tive to convince the petitioner to accept a plea because the petitioner
was unable to pay his trial counsel's trial retainer in full, and that his
trial counsel failed to retain or request funding to retain a forensic mental
health professional and to identify innocent alternative explanations
for the allegations against the petitioner. The habeas court rendered
judgment denying the habeas petition and, thereafter, denied the petition
for certification to appeal, and the petitioner appealed to this court. *Held*:

1. The habeas court did not abuse its discretion in denying the petition for
certification to appeal with respect to the claim that the petitioner was
denied his constitutional right to counsel free from conflicts of interest:
the trial fee arrangement was not a flat fee, there were no findings to
suggest that trial counsel abandoned his obligations to the petitioner
to focus on other more lucrative endeavors, especially given that trial
counsel was successful in securing a favorable plea arrangement that
dramatically reduced the petitioner's potential prison sentence and his
time on the sex offender registry, and the mere fact that trial counsel
faced the possibility of not being paid fully in the event the case went
to trial did not compel the inference that his advice was not consonant
with the petitioner's interests; moreover, the petitioner's reliance on
certain case law holding that indigent, self-represented defendants have
a constitutional right to expert or investigative assistance reasonably
necessary to their defense, which was not decided until after the peti-
tioner pleaded guilty and was sentenced, was unavailing, as trial counsel
did not act unreasonably by failing to request an expert witness in
accordance with precedent that did not exist at the time of the represen-
tation, and there having been a reasonable, strategic basis for trial
counsel's decision not to seek court funding for an expert, his failure
to do so was not necessarily representative of a conflict of interest.

2. The habeas court did not abuse its discretion in denying the petition
for certification to appeal with respect to the petitioner's ineffective
assistance of counsel claim: the record showed that trial counsel's deci-
sion not to retain or request funding to retain an expert was based on
a number of appropriate factors, including his experience defending
cases involving sexual assault of young children, his view that the foren-
sic interview of the victim had been conducted properly and that the
victim appeared comfortable throughout the forensic interview, which
made her statements less susceptible to impeachment, and, thus, his
determination that the retention of a forensic psychologist would not
have been a worthwhile strategy under the circumstances; moreover,
there were no findings of fact in the record to support the petitioner's
claim that the victim's foster father was the possible culprit, and trial
counsel testified that he had considered and investigated the alternate
theory that the petitioner simply was treating the victim's skin condition,
and decided it was not worth pursuing because of contradictory facts
in the case, and his failure to pursue that theory of innocence did not
constitute deficient performance.

Argued April 17—officially released July 31, 2018

*Procedural History*

Amended petition for a writ of habeas corpus,
brought to the Superior Court in the judicial district
of Tolland and tried to the court, *Fuger, J.*; judgment

denying the petition; thereafter, the court, *Fuger, J.*, denied the petition for certification to appeal, and the petitioner appealed to this court; subsequently, the court, *Bright, J.*, denied the petitioner's motion for articulation; thereafter, the court, *Bright, J.*, granted in part the petitioner's motion for rectification; subsequently, the court, *Kwak, J.*, denied the petitioner's motion for order. *Appeal dismissed.*

*Damon A. R. Kirschbaum*, with whom, on the brief, was *Vishal K. Garg*, for the appellant (petitioner).

*Bruce R. Lockwood*, senior assistant state's attorney, with whom, on the brief, were *Anne Mahoney*, state's attorney, and *Jo Anne Sulik*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

DiPENTIMA, C. J. The petitioner, John Grover, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court (1) abused its discretion in denying his petition for certification to appeal and (2) erroneously determined that he was not denied his constitutional rights to counsel free from conflicts of interest and to the effective assistance of counsel.[1]

The record reveals the following relevant facts and procedural history. On October 25, 2013, the petitioner entered a plea of guilty under the *Alford* doctrine[2] to one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (2), and, on January 7, 2014, the court sentenced him to seven years imprisonment followed by ten years special parole; he also was required to register as a sex offender for ten years. At the petitioner's plea hearing, the prosecutor recited the following narrative.

In February 2011, the petitioner was in a relationship with the victim's mother and lived with her and the female victim in Scotland, Connecticut. At that time, the victim was ten years old.

"On [February 15, 2011] the victim went to school at Scotland Elementary School and she made a disclosure [that the petitioner] had touched her private areas and [had] also used lotion [on her]. Subsequently, the victim was interviewed the following day at a child-friendly location forensically.

"During that interview the victim disclosed [that the petitioner] and herself were alone in the master bedroom of the residence. The [petitioner] pulled down the pants of the victim and lifted up her shirt and began rubbing lotion on her stomach and on her legs to include also her inner thighs and also her vaginal area.

"At some point the [petitioner] took a vibrator that he had in his dresser and then also used that to have contact with [the victim's] intimate parts . . . . An investigation was conducted and ultimately an arrest warrant was applied for and granted charging [the petitioner] with the crime of risk of injury [to a child] and sexual assault in the first degree."

On April 6, 2011, the petitioner was arraigned and bond was set at $75,000 cash or surety; the petitioner posted bond the same day. The petitioner originally was charged with sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and risk of injury to a child in violation of § 53-21 (a) (2).[3]

Prior to his arrest, the petitioner hired Attorney Jerome Paun to represent him during the criminal investigation. Following his arrest, the petitioner and Paun

entered into a fee agreement for the purposes of pretrial representation. The agreement provided for a fixed fee of $7500 and covered all work leading up to trial. Under the terms of this same agreement, once the case was placed on the trial list, Paun was to be paid $250 an hour with a $5000 retainer to be paid in full within thirty days of the case being placed on the trial list. The petitioner was employed when he hired Paun and was able to pay the $7500 pretrial fee and to post bond for his release. While the petitioner did not pay the trial retainer in full, Paun estimated that he was able to pay $2000 of the $5000 owed.

After jury selection, but before trial, the petitioner reached a plea agreement with the prosecutor pursuant to which he pleaded guilty to one count of risk of injury to a child in violation of § 53-21 (a) (2). He was sentenced on January 7, 2014.

On March 4, 2015, the petitioner filed an amended petition for writ of habeas corpus. Relevant to this appeal, the petitioner alleged that he was denied his constitutional right to counsel free from conflicts of interest because Paun had an actual conflict with respect to his representation of the petitioner. Specifically, he argued that Paun had a financial incentive to convince the petitioner to accept a plea rather than proceed to trial due to the fact that the petitioner was unable to pay Paun's trial retainer in full. The petitioner additionally claimed that he was denied his constitutional right to effective assistance of counsel because Paun failed (1) to retain or request funding from the trial court in order to retain a forensic mental health professional with expertise in investigating and assessing child sexual abuse allegations and (2) to identify innocent alternative explanations for the allegations against the petitioner.

The petitioner's habeas trial was held on two separate dates in October and December, 2015. At trial, the petitioner presented evidence from Dr. Nancy Eiswirth, an expert witness in forensic psychology, and Attorney Michael Sheehan, who testified as a legal expert in the area of criminal defense. Eiswirth testified that she had reviewed the victim's forensic interview and had identified several issues with respect to the manner in which it had been conducted. Specifically, Eiswirth opined that the interview was not tailored properly to accommodate the victim's age and mental development; she also was critical of the interviewer's failure to rectify contradictions and ambiguities in the victim's statement. Following this testimony, Sheehan testified that based on his experience, if it seemed likely that the forensic interview would be admitted into evidence, a reasonably competent defense attorney would have retained a forensic psychologist like Eiswirth to attack the credibility of the victim's statements made during the interview.

When asked whether he considered hiring an expert forensic psychologist, Paun testified that "it's always a consideration" and depended on the "terms of each particular case." Paun stated that based on his review of the forensic interview and his own interview of the victim,[4] hiring an expert witness did not seem like a "terribly fruitful" strategy. Paun, whom the habeas court credited as conducting a full investigation of this case, did not consider the structure of the forensic interview to be improper nor did he find the interviewer's questions to be leading or coercive. Moreover, following his own interview of the victim, Paun concluded that her story remained largely consistent with her earlier statements. He consulted with the petitioner about the prospect of hiring an expert witness but cautioned that, given the strength of the state's case, there was a substantial possibility he would be found guilty at trial. Paun testified that the petitioner ultimately instructed him to negotiate a plea agreement.

On November 2, 2016, the habeas court denied the petition for writ of habeas corpus. The court found that Paun had not labored under a conflict of interest and had provided effective representation to the petitioner. The court rejected the petitioner's argument that Paun rendered deficient performance in failing to request funding for an expert witness because the petitioner was not indigent and would not have qualified for such assistance had it been requested. The habeas court also found that, irrespective of whether performance was deficient, the petitioner was not prejudiced by Paun's conduct and that even if Paun had obtained an expert opinion, he would have still advised the petitioner to plead guilty rather than proceed to trial. Thereafter, the petitioner filed a petition for certification to appeal. After the court denied the petition for certification to appeal, this appeal followed. Additional facts will be set forth as necessary.

I

The petitioner first claims that the habeas court improperly denied his petition for certification to appeal. We disagree and "begin by setting forth the procedural hurdles that the petitioner must surmount to obtain appellate review of the merits of a habeas court's denial of the habeas petition following denial of certification to appeal. In *Simms* v. *Warden*, 229 Conn. 178, 187, 640 A.2d 601 (1994), [our Supreme Court] concluded that . . . [General Statutes] § 52-470 (b) prevents a reviewing court from hearing the merits of a habeas appeal following the denial of certification to appeal unless the petitioner establishes that the denial of certification constituted an abuse of discretion by the habeas court. In *Simms* v. *Warden*, 230 Conn. 608, 615–16, 646 A.2d 126 (1994), [our Supreme Court] incorporated the factors adopted by the United States Supreme Court in *Lozada* v. *Deeds*, 498 U.S. 430, 431–32,

111 S. Ct. 860, 112 L. Ed. 2d 956 (1991), as the appropriate standard for determining whether the habeas court abused its discretion in denying certification to appeal. This standard requires the petitioner to demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . A petitioner who establishes an abuse of discretion through one of the factors listed above must then demonstrate that the judgment of the habeas court should be reversed on its merits. . . . In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous." (Emphasis in original; internal quotation marks omitted.) *Haughey* v. *Commissioner of Correction*, 173 Conn. App. 559, 562–63, 164 A.3d 849, cert. denied, 327 Conn. 906, 170 A.3d 1 (2017).

For the reasons set forth in this opinion, we conclude that the petitioner has failed to show that his claims are debatable among jurists of reason; that a court *could* resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further. Therefore, we further conclude the habeas court did not abuse its discretion in denying the petition for certification to appeal.

II

The petitioner claims that he was denied his constitutional right to counsel free from conflicts of interest. Specifically, he argues that Paun "had a financial incentive to (1) convince [him] to accept the plea agreement due to [his] inability to pay the trial fee, (2) withhold information . . . about his constitutional right to reasonably necessary expenses to formulate and present a defense, and (3) forego filing a motion in the trial court requesting funding for expert witnesses." The petitioner further contends that he was affected adversely by counsel's conflicting interests. We disagree.

Our courts have recognized that "[t]he sixth amendment to the United States constitution as applied to the states through the fourteenth amendment, and article first, § 8, of the Connecticut constitution, guarantee[s] to a criminal defendant the right to effective assistance of counsel. . . . Where a constitutional right to counsel exists, our [s]ixth [a]mendment cases hold that there is a correlative right to representation that is free from conflicts of interest." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *State* v. *Crespo*, 246 Conn. 665, 685, 718 A.2d 925 (1998), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999).

"In a case of a claimed conflict of interest . . . in order to establish a violation of the sixth amendment the defendant has a two-pronged task. He must establish (1) that counsel actively represented conflicting interests and (2) that an *actual conflict of interest* adversely affected his lawyer's performance. . . . Where there is an actual conflict of interest, prejudice is presumed because counsel [has] breach[ed] the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. . . . Accordingly, an ineffectiveness claim predicated on an actual conflict of interest is unlike other ineffectiveness claims in that the petitioner need not establish actual prejudice. . . .

"*An actual conflict of interest is more than a theoretical conflict.* The United States Supreme Court has cautioned that the possibility of conflict is insufficient to impugn a criminal conviction. . . . A conflict is merely a potential conflict of interest if the interests of the defendant may place the attorney under inconsistent duties at some time in the future. . . . To demonstrate an actual conflict of interest, the petitioner must be able to *point to specific instances in the record which suggest impairment or compromise of his interests for the benefit of another party.*"[5] (Emphasis in original; internal quotation marks omitted.) *Tilus* v. *Commissioner of Correction*, 175 Conn. App. 336, 349–50, 167 A.3d 1136, cert. denied, 327 Conn. 962, 172 A.3d 800 (2017).

In resolving the petitioner's claim, we apply well established standards of review. "On appellate review, the historical facts found by the habeas court may not be disturbed unless they [are] clearly erroneous . . . ." (Internal quotation marks omitted.) *Rodriguez* v. *Commissioner of Correction*, 131 Conn. App. 336, 343, 27 A.3d 404 (2011), aff'd, 312 Conn. 345, 92 A.3d 944 (2014). "Whether the circumstances of pretrial counsel's representation, as found by the habeas court, amount to an actual conflict of interest is a question of law [over] which our review is plenary." *Shefelbine* v. *Commissioner of Correction*, 150 Conn. App. 182, 193, 90 A.3d 987 (2014).

The petitioner first argues that an actual conflict of interest existed because Paun had a financial incentive to convince him to plead guilty. We do not agree that the petitioner's inability to pay the outstanding balance of the trial retainer created such a conflict. According to the testimony of Paun, which the habeas court credited in its entirety, although he was disappointed that the trial retainer had not been paid in full, Paun valued his professional reputation above any single fee. He testified that his advice throughout the pendency of the criminal case was based on his overall assessment of the facts and not the financial situation of the petitioner.

As the lone authority for his position that an actual conflict of interest arises from an unpaid trial retainer, the petitioner cites *State* v. *Cheatham*, 296 Kan. 417, 292 P.3d 318 (2013). This decision is inapposite. In *Cheatham*, the Kansas Supreme Court addressed the propriety of a flat fee arrangement in a death penalty case. Id., 452–53. There, the court concluded that such an arrangement was highly disfavored because an attorney was incentivized to do no more than necessary to secure the fee rather than seek an acquittal for his or her client. Id., 453. Moreover, the attorney in *Cheatham* admitted that he had invested minimal time in his client's case because he needed "to earn a living." Id., 454.

Here, not only was the trial fee arrangement between Paun and the petitioner not a flat fee, but there are no findings that suggest Paun abandoned his obligations to the petitioner to focus on more lucrative endeavors. Indeed, he was successful in securing a favorable plea arrangement for his client that, given the original charges, dramatically reduced the petitioner's potential prison sentence and his time on the sex offender registry. The mere fact that counsel faced the possibility of not being paid fully in the event the case went to trial does not compel the inference that his advice was not consonant with his client's interests.

The petitioner next argues that because Paun had a financial incentive to avoid trial, he withheld information from the petitioner concerning his constitutional right to reasonably necessary expenses to formulate and present a defense and, concomitantly, failed to file a motion for the funding of an expert witness. In support of this contention, the petitioner principally relies on two cases: First, our Supreme Court's holding in *State* v. *Wang*, 312 Conn. 222, 92 A.3d 220 (2014) and, second, the United States Supreme Court's decision in *Ake* v. *Oklahoma*, 470 U.S. 68, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985). In *Wang*, our Supreme Court held that indigent, self-represented defendants have a constitutional right to expert or investigative assistance that is reasonably necessary to their defense. *State* v. *Wang*, supra, 245. In *Ake*, the United States Supreme Court recognized that the state must assure an indigent defendant's access to a psychiatric evaluation when the sanity of the defendant is likely to be a significant factor at trial. *Ake* v. *Oklahoma*, supra, 82–83.

Although we acknowledge the habeas court's finding that the petitioner in this case would not have qualified for such assistance had it been requested, we resolve this issue on different grounds. See *Diaz* v. *Commissioner of Correction*, 125 Conn. App. 57, 63 n.6, 6 A.3d 213 (2010) ("[i]t is axiomatic that [w]e may affirm a proper result of the trial court for a different reason" [internal quotation marks omitted]), cert. denied, 299 Conn. 926, 11 A.3d 150 (2011). Even if the petitioner was indigent, *Wang* had not been decided until after

the petitioner pleaded guilty and was sentenced.[6] We will not conclude that Paun acted unreasonably by failing to request an expert witness in accordance with court precedent that did not exist at the time of representation. See *Bryant* v. *Commissioner of Correction*, 290 Conn. 502, 513, 964 A.2d 1186 ("a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct" [internal quotation marks omitted]), cert. denied sub nom. *Murphy* v. *Bryant*, 558 U.S. 938, 130 S. Ct. 259, 175 L. Ed. 2d 242 (2009).

Further, to the extent that Paun could have fashioned an argument for the funding of an expert pursuant to the Supreme Court's holding in *Ake* v. *Oklahoma*, supra, 470 U.S. 68, we do not believe that his failure to do so suggests impairment or compromise of the petitioner's interests. As our Supreme Court acknowledged in *Wang*, the holding of *Ake* left many questions unanswered concerning "the scope of the due process right to expert assistance at public expense." *State* v. *Wang*, supra, 312 Conn. 235. Indeed, only four years prior to *Wang*, our Supreme Court in *State* v. *Martinez*, 295 Conn. 758, 991 A.2d 1086 (2010), declined to answer whether the due process clause of the fourteenth amendment to the United States constitution guarantees an indigent defendant the right to an expert witness when reasonably necessary. Id., 778. Moreover, apart from the unsettled legal precedent for such a request, Paun explained that there were also factual reasons that militated against seeking court funding for an expert witness. Specifically, in this instance, the petitioner had hired private counsel, he had posted a substantial bond, and the case was in a judicial district where, in Paun's opinion, funding for an expert was unlikely to be considered a reasonably necessary case expenditure. Inasmuch as to perform effectively, counsel need not raise every constitutional claim conceivable, similarly, we conclude that such omissions are not necessarily representative of a conflict of interest, especially when there is a reasonable, strategic basis for counsel's choice of conduct. See *Ledbetter* v. *Commissioner of Correction*, 275 Conn. 451, 460–61, 880 A.2d 160 (2005).

We therefore conclude the petitioner has failed to show that this issue is debatable amongst jurists of reason, that a court could resolve the issue in a different manner, or that the issue is adequate to deserve encouragement to proceed further. We further conclude the habeas court did not abuse its discretion in denying the petition for certification to appeal with respect to this claim.

III

The petitioner next claims that the habeas court improperly concluded that he received effective assistance of counsel. Specifically, the petitioner argues that

Paun failed (1) to retain an expert forensic psychologist and (2) to identify and pursue alternative innocent explanations for the victim's claims against him. We do not agree.

We begin by acknowledging the established standard for reviewing a constitutional claim of ineffective assistance of counsel. "A habeas petitioner can prevail on a constitutional claim of ineffective assistance of counsel [only if he can] establish both (1) deficient performance, and (2) actual prejudice.[7] . . . For ineffectiveness claims resulting from guilty verdicts, we apply the two-pronged standard set forth in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Levine* v. *Manson*, 195 Conn. 636, 639–40, 490 A.2d 82 (1985). For ineffectiveness claims resulting from guilty pleas, we apply the standard set forth in *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), which modified *Strickland*'s prejudice prong. . . .

"To satisfy the performance prong, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. . . . A petitioner who accepts counsel's advice to plead guilty has the burden of demonstrating on habeas appeal that the advice was not within the range of competence demanded of attorneys in criminal cases. . . . The range of competence demanded is reasonably competent, or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . Reasonably competent attorneys may advise their clients to plead guilty even if defenses may exist. . . . A reviewing court must view counsel's conduct with a strong presumption that it falls within the wide range of reasonable professional assistance." (Footnote added; internal quotation marks omitted.) *Shelton* v. *Commissioner of Correction*, 116 Conn. App. 867, 874, 977 A.2d 714, cert. denied, 293 Conn. 936, 981 A.2d 1080 (2009).

"Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Bigelow* v. *Commissioner of Correction*, 175 Conn. App. 206, 212, 167 A.3d 1054, cert. denied, 327 Conn. 929, 171 A.3d 455 (2017). For the reasons provided herein, we conclude that the petitioner has not met his burden of demonstrating deficient performance and, therefore, do not reach the issue of prejudice. "With respect to the performance prong of *Strickland*, we are mindful that judicial scrutiny of counsel's performance must be highly deferential. It is

all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a *strong presumption* that [Paun's] conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." (Emphasis in original; internal quotation marks omitted.) *Michael T.* v. *Commissioner of Correction*, 319 Conn. 623, 632, 126 A.3d 558 (2015).

First, the petitioner argues that Paun's performance was deficient because he failed to retain, or request funding to retain, an expert witness. We are not persuaded. It is evident from the record that Paun's decision not to retain, or request funding to retain, an expert was based on a number of appropriate factors. Paun, whose testimony the habeas court credited in its entirety, had experience defending cases involving sexual assault of young children. He was aware that forensic psychologists were available and could be helpful in certain situations. He determined, however, that such a strategy was probably not worthwhile in this case. Here, the victim appeared comfortable throughout the forensic interview and offered information freely and at times in an unsolicited manner. He viewed the interview as having been conducted properly given his general understanding of the applicable procedures for conducting such interviews. From his experience, Paun testified that these facts made the victim's statements less susceptible to impeachment by a forensic psychologist.

Our courts have held in similar circumstances that failing to retain or utilize an expert witness is not deficient when part of a legitimate and reasonable defense strategy. See, e.g., id., 638 (finding that trial counsel's decision not to call expert was reasonable given possible evidentiary repercussions); see also *Victor C.* v. *Commissioner of Correction*, 179 Conn. App. 706, 719–720, 180 A.3d 969 (2018) (decision not to retain expert witness was not deficient in light of counsel's experience and training with regard to defending child sexual assault cases). Mindful of these cases and the findings of the habeas court, we are not persuaded that Paun's

decision not to retain or consult an expert witness constitutes deficient performance.

In addition to failing to retain an expert witness, the petitioner also claims that Paun's performance was deficient because he failed to identify alternative innocent explanations for the victim's allegations against the petitioner. In support of this claim, the petitioner first contends that Paun failed to consider the fact that the victim spent the weekend preceding the February 14, 2011, incident with her foster father and that she may have confused him with the petitioner as the perpetrator of the abuse. Second, he contends that Paun failed to consider evidence to support the theory that the victim simply misreported an innocent touch. Specifically, the petitioner asserts that he had applied lotion to treat the victim's eczema consistent with a physician's recommendation, evidence of which could supposedly be found in the victim's pediatric records.

With respect to the petitioner's first argument that Paun purportedly failed to investigate the victim's foster father as the possible culprit, we can ascertain no findings of fact in the record to support this contention. Although the habeas court heard testimony from the victim's mother on this point, there is no indication that the court credited this evidence in any respect. Absent a finding from the habeas court that supports the petitioner's claim, we cannot conclude that Paun's decision not to investigate this alternative theory was constitutionally deficient.

Furthermore, contrary to the petitioner's argument, Paun testified that he had considered and, in fact, did investigate the alternate theory that the petitioner simply was treating the victim's eczema. He decided that this theory was not worth pursuing because of contradictory facts in the case. In particular, this theory did not explain the victim's allegations concerning the vibrator nor was it consistent with the mother's initial statement to the police. In that statement, the mother told investigators that the victim's eczema was on her arms and that the petitioner never had applied lotion to the victim in the past. Given these surrounding facts, and the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"; (internal quotation marks omitted) *Sanders* v. *Commissioner of Correction*, 169 Conn. App. 813, 840, 153 A.3d 8 (2016), cert. denied, 325 Conn. 904, 156 A.3d 536 (2017); we cannot conclude that failing to pursue this theory of innocence constituted deficient performance.

We thus conclude the petitioner has failed to show that his claim of ineffective assistance of counsel involves issues that are debatable amongst jurists of reason, that a court could resolve the issues in a different manner, or that the issues are adequate to deserve encouragement to proceed further. Accordingly, the habeas court did not abuse its discretion in denying

the petition for certification to appeal with respect to this claim.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] The petitioner also claims that the habeas court failed to address or make findings of fact with respect to several claims that were presented in his amended petition. Although the petitioner acknowledges that the appellant bears the burden of providing this court with an adequate record to review, he argues that circumstances beyond his control have prevented him from doing so.

As noted in this opinion, the petitioner is appealing from the judgment of the habeas court rendered by *Fuger, J.* on November 2, 2016. Following the decision to deny the petition for a writ of habeas corpus, the petitioner filed a motion for articulation on May 15, 2017, regarding the court's purported failure (1) to address the merits of each of the petitioner's claims and (2) to provide final rulings on certain evidentiary issues. Pursuant to General Statutes § 52-470 (g) and Practice Book § 80-1, because Judge Fuger retired effective February 7, 2017, the motion was directed to *Bright, J.,* who denied the motion after finding that it could not be addressed on its merits. Accordingly, in light of these facts, the petitioner requests that we remand this case for a new trial consistent with our decision in *Claude* v. *Claude*, 143 Conn. App. 307, 68 A.3d 1204 (2013). We believe that such extraordinary relief is unwarranted.

In *Claude*, we faced the unique situation in which the trial court failed to provide this court with any articulation of its decision, even after being ordered to do so. Id., 310–11. As it was impossible to divine the basis for the court's decision from its "postcard order," and because the plaintiff could not be faulted for the inadequate record, we remanded the case for a new hearing. Id., 312. While this case is similar to *Claude* insofar as the retirement of the presiding trial judge has prevented the petitioner from seeking articulation with respect to several of his claims, we do not agree that the unavailability of Judge Fuger prevents us from properly addressing the merits of this appeal.

The petitioner also argues that the habeas court's memorandum of decision includes factual inaccuracies that call into question its reliability. We acknowledge that there appear to be two places in the decision in which the court suggests that the petitioner's case went to trial; although any such suggestion is clearly erroneous, we do not conclude that such mistakes affect the soundness of the court's other findings.

[2] "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant is not required to admit his guilt . . . but consents to being punished as if he were guilty to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." (Internal quotation marks omitted.) *Rodriguez* v. *Commissioner of Correction*, 167 Conn. App. 233, 234 n.1, 143 A.3d 630, cert. denied, 323 Conn. 929, 150 A.3d 231 (2016).

[3] The petitioner later was charged with violation of a protective order when the victim's mother brought the victim to see him during the pendency of the criminal case. This charge later was dropped as part of the petitioner's plea agreement.

[4] Prior to trial, Paun received permission from the victim's guardian ad litem to interview the victim in person.

[5] We note that the petitioner has made no argument that a potential or theoretical conflict of interest existed in this circumstance. His only contention with respect to this claim is that his inability to pay Paun's trial fee in full gave rise to an actual conflict of interest.

[6] *State* v. *Wang*, supra, 312 Conn. 222, was decided on June 17, 2014. The petitioner pleaded guilty on October 25, 2013, and was sentenced on January 7, 2014.

[7] When a "petitioner has failed to meet the performance prong of *Strickland*, we need not reach the issue of prejudice under *Hill* v. *Lockhart*, [474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)]. It is well settled that [a] reviewing court can find against a petitioner on either ground, whichever is easier." (Internal quotation marks omitted.) *Placide* v. *Commissioner of Correction*, 167 Conn. App. 497, 504 n.2, 143 A.3d 1174, cert. denied, 323 Conn. 922, 150 A.3d 1150 (2016).