******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

Elgo, Clark and Sheldon, Js.

*Syllabus*

The petitioner, who had been convicted, on pleas of guilty, of the crimes
    of capital felony, assault in the first degree and attempt to commit
    escape from custody, sought a writ of habeas corpus, claiming that his
    trial counsel, L and S, had rendered ineffective assistance. The petitioner,
    armed with a handgun, had entered a residence occupied by two women
    where he shot one of the women and sexually assaulted the other before
    driving her in her vehicle to a secluded location where he shot and
    killed her. The petitioner thereafter gave the police a detailed, written
    confession admitting his participation in the crimes. After investigating
    the viability of various defenses, including a potential mental disease
    or defect defense, and concluding that the success of a motion to sup-
    press the petitioner's confession was highly speculative, L and S advised
    the petitioner to enter into an agreement with the state, under which
    he would plead guilty and receive a sentence of life imprisonment with-
    out the possibility of release in exchange for the state's agreement not
    to pursue the death penalty against him. The court rendered judgment
    denying the habeas petition. The court concluded that the petitioner
    had failed to prove that his counsel had rendered deficient performance
    related to the motion to suppress claim or by failing to investigate and
    pursue a mental disease or defect defense. The court further held that
    the petitioner had failed to establish that he was prejudiced by demon-
    strating that he would have rejected the plea agreement and gone to
    trial had he been advised regarding the motion to suppress or the poten-
    tial mental disease or defect defense. The court thereafter granted the
    petitioner's petition for certification to appeal, and the petitioner
    appealed to this court. *Held*:

1. The petitioner could not prevail on his claim that the habeas court improp-
    erly determined that L and S did not render ineffective assistance:

    a. The habeas court correctly determined that the petitioner failed to
    prove that he was prejudiced by any purported failure of L and S to advise
    him properly regarding a possible motion to suppress his confession:
    the petitioner presented no evidence that he was prejudiced, and the
    court based its determination on the undisputed factual circumstances
    of the petitioner's case, in which he faced a possible death sentence at
    the time he considered whether to plead guilty to crimes for which there
    was a surviving eyewitness, significant physical evidence and little hope
    of being able to raise reasonable doubt because of an eyewitness identifi-
    cation error or by asserting that he had been wrongly accused; moreover,
    the court credited L's testimony that it would have been very difficult
    to personalize the petitioner to a jury in light of the facts of the case
    and the petitioner's criminal history, and that, even if L and S had moved
    to suppress the confession, the success of such a motion was highly
    speculative.

    b. L and S did not render deficient performance, as the petitioner claimed,
    by failing to investigate and inform him about a potential mental disease
    or defect defense: L and S had no duty to inform the petitioner of a
    possible mental disease or defect defense because it was not established
    as a viable defense in the circumstances of the petitioner's case, as the
    court credited the testimony of L and S that they had investigated the
    petitioner's mental health and saw nothing to indicate that he was incom-
    petent or that he suffered from a mental disease or defect; moreover, it
    was sound trial strategy for L and S to negotiate a guilty plea for a
    sentence of life imprisonment in exchange for the state's removal of the
    possibility that the death penalty would be imposed, and, although the
    petitioner claimed that he was unable to make informed decisions about
    the objectives of his counsel's representation because they had not prop-
    erly informed him about the mental disease or defect defense, he provided
    no legal authority for the premise that counsel is required to fully inform

a defendant of a factually unsupported defense that was never considered as a serious option except as a last resort if the state persisted in pursuing the death penalty.

2. This court did not need to reach the petitioner's claim that the habeas court abused its discretion when it sustained an objection by the respondent, the Commissioner of Correction, that prevented the petitioner from testifying that he would have rejected the plea agreement and insisted on going to trial had L and S more fully informed him of the possibility of raising a mental disease or defect defense; although the petitioner contended that the habeas court's evidentiary ruling was harmful because it left him without a way to establish that he was prejudiced by his counsel's performance, there was no need for this court to adjudicate that claim, as the habeas court already had properly concluded that the petitioner failed to establish that L and S rendered deficient performance with respect to the pursuit of a mental disease or defect defense, this court having repeatedly explained that ineffective assistance claims may be resolved under either the performance prong or the prejudice prong of the test for ineffective assistance of counsel.

Argued October 25, 2023—officially released February 13, 2024

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *M. Murphy, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Matthew C. Eagan*, assigned counsel, for the appellant (petitioner).

*Melissa E. Patterson*, senior assistant state's attorney, with whom, on the brief, were *Christian M. Watson*, state's attorney, and *Angela R. Macchiarulo*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

ELGO, J. The petitioner, Leslie Williams, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus alleging ineffective assistance of trial counsel. The petitioner claims that he relied on the advice of counsel when he pleaded guilty to capital felony and other charges, accepting a total effective sentence of life imprisonment without the possibility of release in exchange for the state's agreeing to not seek the death penalty against him.[1] On appeal, the petitioner contends that the court (1) improperly rejected his claims that counsel rendered ineffective assistance by failing to move to suppress his confession and failing to investigate or properly advise him of a potential mental disease or defect defense, and (2) abused its discretion in excluding his testimony that he would have rejected the plea agreement and insisted on going to trial if his counsel had properly informed him of the potential defense to his pending charges. We affirm the judgment of the habeas court.

The following facts and procedural history, as found by the habeas court or as undisputed by the parties, are relevant to our resolution of the petitioner's claims. On the morning of March 30, 2008, the petitioner entered a New Britain residence occupied by the owner, L, and her friend, M.[2] The petitioner brandished a handgun, demanded valuables, and forced the two women into the basement where he shot L in the head. L survived the shooting but pretended to be dead on the basement floor. The petitioner sexually assaulted M before abducting her from the residence and driving her in her vehicle to a secluded location in Bristol. When M exited the vehicle, the petitioner shot and killed her, then pushed her body over the edge of the road. At the residence, after the petitioner and M had left, L was able to leave the basement and make it to a neighbor's home. The neighbor called the police, and the police issued a notice to be on the lookout for M's vehicle. Later that day, the police spotted the petitioner in M's vehicle, and a high-speed chase ensued, culminating in the petitioner's apprehension. While the petitioner was in custody following his apprehension, the police questioned him about what had happened before his apprehension, including the events at L's residence and their aftermath. Although the petitioner initially denied any knowledge of those events, he eventually provided and signed a seven page confession admitting his participation in those events in addition to telling authorities where they could find M's body.

On March 31, 2008, the petitioner was charged with capital felony in violation of General Statutes (Rev. to 2007) § 53a-54b (6)[3] and assault in the first degree in violation of General Statutes § 53a-59 (a) (5).

On December 8, 2011, pursuant to a plea agreement

under which the petitioner pleaded guilty and accepted a sentence of life imprisonment without the possibility of release in exchange for the state's agreement not to pursue the death penalty against him, the petitioner pleaded guilty to capital felony in violation of § 53a-54b (6), assault in the first degree in violation of § 53a-59 (a) (5), and attempt to commit escape from custody in violation of General Statutes § 53a-49 and General Statutes (Rev. to 2011) § 53a-171.[4] Prior to accepting the guilty pleas, the court canvassed the petitioner, asking in relevant part, whether the recitation of facts presented by the prosecutor was correct and he was pleading guilty due to actual guilt; whether he had adequate time to meet with counsel before pleading guilty and was satisfied with the advice of counsel regarding his guilty pleas; whether counsel had explained to him that the state had the burden of proving the elements of capital felony, assault in the first degree, and attempt to escape from custody beyond a reasonable doubt; and whether he understood that, by pleading guilty, he was giving up the ability to present any defenses, including "a mental state defense" if his counsel thought it would be helpful. The court additionally asked whether the petitioner understood that, if the case proceeded to trial and he was found guilty, a jury of twelve would have to vote unanimously in favor of the death penalty or a three judge panel would have to vote at least two to one in favor of that penalty before it could be imposed against him; and whether avoiding the death penalty was a reason he was entering his pleas of guilty. The petitioner answered in the affirmative to each of the court's inquiries.

During the plea canvass, the petitioner's counsel, Attorneys R. Bruce Lorenzen and David G. E. Smith, denied that any issues had arisen involving the petitioner's competence or mental disease when asked directly by the court. Upon completing the canvass, the court found that the guilty pleas had been made knowingly, voluntarily, and intelligently, with the effective assistance of counsel. The court then sentenced the petitioner to life imprisonment without the possibility of release for capital felony pursuant to § 53a-54b (6) and imposed concurrent sentences for the assault and attempted escape crimes. The petitioner did not file a direct appeal from his convictions.

On March 9, 2021, the petitioner filed an amended petition for a writ of habeas corpus, alleging that trial counsel had rendered ineffective assistance by (1) "[f]ailing to advise [him] regarding the possibility that he could move to suppress" his confession and failing to move to suppress the confession, and (2) "[f]ailing to advise [him] that [he] could . . . raise a mental disease or defect defense [in] the guilt phase of his capital felony trial" and allowing him to plead guilty without advising him of the same.[5]

A habeas trial was held on March 9, 2022. The petitioner provided exhibits to the court in the form of transcripts from the plea and sentencing hearings, a mitigation outline, which had been prepared by trial counsel and their capital defense team, and the court clerk's file from the underlying criminal case. The court heard testimony from the petitioner and the petitioner's criminal trial counsel, Lorenzen and Smith. No other witnesses were presented. Lorenzen and Smith testified that, together, they acted as the petitioner's trial counsel at all relevant times for the purpose of the habeas petition.[6] Lorenzen described his role in the underlying case as that of focusing on the guilt phase of the trial, while Smith, as a member of the Office of the Chief Public Defender's capital defense unit, had the role of focusing on the development of mitigating evidence for the penalty phase of the trial. Lorenzen stated, however, that mitigating evidence "would be useful either in discussing a potential plea with the state or, if the case did come to trial, in terms of arguing to the jury that a life sentence would be warranted."

In its June 29, 2022 memorandum of decision, the habeas court found that the petitioner had failed to prove that his counsel rendered deficient performance as to the motion to suppress claim or the mental disease or defect defense claim. The court further held that, given "the factual circumstances in this case," the petitioner had "failed to prove that he was prejudiced" by demonstrating that he would have rejected the plea agreement and gone to trial had he been advised regarding the motion to suppress or the potential mental disease or defect defense. The court thus denied the petition for a writ of habeas corpus. It thereafter granted the petitioner's petition for certification to appeal, and this appeal followed.

I

The petitioner first claims that the court improperly denied his ineffective assistance of counsel claims. We disagree.

In considering the merits of that claim, we first set forth the well settled standard of review in a habeas corpus proceeding. "When reviewing the decision of a habeas court, the facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . The issue, however, of [w]hether the representation [that] a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard. . . . Under the [test articulated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)], when a petitioner alleges ineffective assistance of counsel, he must estab-

lish that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . . Furthermore, because a successful petitioner must satisfy both prongs of the [*Strickland-Hill*] test, failure to satisfy either prong is fatal to a habeas petition. . . .

"To satisfy the first prong, that his counsel's performance was deficient, the petitioner must establish that his counsel made errors so serious that [counsel] was not functioning as the counsel guaranteed the [petitioner] by the [s]ixth [a]mendment. . . . The petitioner must thus show that counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . Furthermore, the right to counsel is not the right to perfect counsel." (Citations omitted; internal quotation marks omitted.) *Diaz* v. *Commissioner of Correction*, 214 Conn. App. 199, 212–13, 280 A.3d 526, cert. denied, 345 Conn. 967, 285 A.3d 736 (2022).

"In the context of a habeas petition claiming ineffective assistance of counsel where the petitioner pleaded guilty, a petitioner satisfies the prejudice prong of the [*Strickland-Hill*] test if he reasonably demonstrates that, but for the conduct of counsel, the petitioner would not have pleaded guilty. . . . However, a petitioner must make more than a bare allegation that he would have pleaded differently to demonstrate prejudice . . . because such a statement suffers from obvious credibility problems and must be evaluated in light of the circumstances the defendant would have faced at the time of his decision." (Citations omitted; internal quotation marks omitted.) *Foster* v. *Commissioner of Correction*, 217 Conn. App. 658, 669, 289 A.3d 1206, cert. denied, 348 Conn. 917, 303 A.3d 1193 (2023).

It is well settled that "courts may decide against a petitioner on either prong [of the *Strickland-Hill* test], whichever is easier. . . . [T]he petitioner's failure to prove either [the performance prong or the prejudice prong] is fatal to a habeas petition. . . . [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." (Citations omitted; internal quotation marks omitted.) *Soto* v. *Commissioner of Correction*, 215 Conn. App. 113, 120, 281 A.3d 1189

(2022).

## A

The petitioner's first claim of ineffective assistance of counsel stems from the detailed confession that the petitioner gave to the New Britain police after he was apprehended. The petitioner claims that counsel was deficient because he was not properly advised that he could move to suppress the statement, and if he had been properly advised, he would not have pleaded guilty and instead would have insisted on going to trial. We are not persuaded. In particular, we agree with the habeas court that the petitioner failed to prove that he was prejudiced by any purported failure by his trial counsel to advise him regarding a possible motion to suppress.[7]

The following additional facts are relevant to resolving this claim. After the petitioner's arrest and prior to the appointment of counsel, the petitioner provided a detailed confession to the police. After the petitioner read his confession, he made and initialed eighteen separate corrections in it.

Both Lorenzen and Smith testified that their primary objective in the underlying case was to prevent the petitioner from receiving the death penalty, but the ultimate decision of whether to plead guilty was left to the petitioner. The habeas court noted that "the state had an extremely strong case against the petitioner," which included not just the confession, but also the identification of the petitioner by the surviving victim, physical evidence linking the petitioner to the crimes, and the fact that the petitioner was apprehended while driving M's vehicle. Lorenzen stated that he and Smith would not have "been able to argue reasonable doubt, or that it was a question of identification, or the wrong person had been accused." Smith testified that, had the case gone to trial, the petitioner's prior criminal history would likely have been disclosed, which included robbery and sale of narcotics, both felonies, as well as the fact that the petitioner had been released from prison less than three weeks before the crimes at issue after having served a sentence for a prior conviction of sexual assault of a five year old child. Lorenzen stated that it would "be very difficult to personalize [the petitioner] to a jury" given the facts counsel had to work with.

At the habeas trial, the petitioner testified that he had told his counsel to suppress the confession, but they told him, "we're not getting it." Lorenzen acknowledged that the initialed corrections the petitioner made to the confession would make it difficult to argue that the confession had not been made freely and voluntarily, or that the petitioner had been suffering under some qualifying disability or burden when he made his confession. Lorenzen stated that it was "highly speculative" as to whether the petitioner would have met the requi-

site legal standard to have the statement suppressed and that he "would not have been optimistic" about the success of the motion. If the case had proceeded to trial, however, Lorenzen said, it would have been standard strategy in a death penalty case to "litigate as many issues as possible, including suppression." Ultimately, counsel were able to secure a plea agreement for a life sentence in exchange for the state's agreement not to pursue the death penalty.

In its memorandum of decision, the court concluded, inter alia, that the petitioner had "failed to prove that he was prejudiced . . . by demonstrating that he would have gone to trial had trial counsel filed or advised him as to filing the motion to suppress given the factual circumstances in this case." On our review of the record, we agree.

"[A] petitioner must make more than a bare allegation that he would have pleaded differently to demonstrate prejudice . . . because such a statement suffers from obvious credibility problems and must be evaluated in light of the circumstances the defendant would have faced at the time of his decision." (Citation omitted; internal quotation marks omitted.) *Foster* v. *Commissioner of Correction*, supra, 217 Conn. App. 669. "In evaluating the credibility of such an assertion, the strength of the state's case is often the best evidence of whether a defendant in fact would have changed his plea and insisted on going to trial, in light of newly discovered evidence or a defense strategy that was not previously contemplated. . . . Likewise, the credibility of the petitioner's after the fact insistence that he would have gone to trial should be assessed in light of the likely risks that pursuing that course would have entailed." (Internal quotation marks omitted.) *Colon* v. *Commissioner of Correction*, 179 Conn. App. 30, 36–37, 177 A.3d 1162, cert. denied, 328 Conn. 907, 178 A.3d 390 (2018). Here, beyond the allegation that the petitioner would have pleaded differently, the petitioner presented no evidence relative to the prejudice prong of the *Strickland-Hill* test, and the court considered "the factual circumstances in this case" as its basis for concluding that the petitioner was unable to demonstrate prejudice.[8]

As previously stated, the factual circumstances facing the petitioner at the time he considered whether to plead guilty included a possible death sentence for crimes in which there was a surviving eyewitness, significant physical evidence, and little hope of being able to raise reasonable doubt via an eyewitness identification error or asserting that the petitioner had been wrongly accused. Lorenzen stated that it would "be very difficult to personalize [the petitioner] to a jury" given the facts of the case and the petitioner's serious criminal history, and, even if counsel had moved to suppress the confession, the success of a suppression

motion would have been highly speculative at best. In its memorandum of decision, the court credited that testimony. See, e.g., *Collins* v. *Commissioner of Correction*, 202 Conn. App. 789, 812, 246 A.3d 1047 (habeas court is sole arbiter of credibility of witnesses and weight to be given to their testimony), cert. denied, 336 Conn. 931, 248 A.3d 1 (2021). In light of that testimony and the uncontroverted factual circumstances reflected in the record before us, we conclude that the petitioner failed to satisfy his burden under the prejudice prong of the *Strickland-Hill* test.

B

The petitioner's second claim of ineffective assistance of counsel is related to a possible mental disease or defect defense that counsel briefly considered as part of their mitigation plan. The petitioner claims that counsel rendered deficient performance because they "fail[ed] to investigate a potential mental disease or defect defense and . . . fail[ed] to advise [him] of such a defense before allowing him to plead guilty." We do not agree.

The following legal principles and additional facts are relevant to this claim. The mental disease or defect defense is governed by General Statutes § 53a-13 (a), which provides that "it shall be an affirmative defense that the defendant, at the time the defendant committed the proscribed act or acts, lacked substantial capacity, as a result of mental disease or defect, either to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law."

The petitioner first claims that counsel "fail[ed] to investigate a potential mental disease or defect defense . . . ." At the habeas trial, Lorenzen testified that he was familiar with the mental disease or defect defense and had "utilized the defense on behalf of other clients," but, in the case of the petitioner, it "was certainly considered" but was "quickly discounted" and "never . . . became a serious option" because "it was not realistic." He further stated that being an experienced public defender afforded him "pretty good practical training" when working with clients who "struggle with mental health or substance abuse," but the petitioner "did not, in any way, strike [him] as being mentally ill" or incompetent, which is why Lorenzen "saw no reason to move for an evaluation based on mental disease or defect." Lorenzen stated that, in his opinion, it was not credible for the petitioner to enter a plea of not guilty by reason of mental disease or defect, as he did not think the petitioner "fit the parameters" for such a plea.

Smith testified in a similar fashion, indicating that he had thirty years of professional experience working on capital cases with "clients [where] mental health and competency is a very fluid concept . . . ." Smith opined that, in the petitioner's case, he did not have a

reason to believe it would be appropriate to request a competency examination. Smith stated that, rather than discounting the mental disease or defect defense, "it was more of an issue of back burnering it, but if . . . we had nothing else and we needed to go forward, we would do that," making clear that "saving the life of our client is always . . . the primary goal."

The record contains a mitigation outline that Smith created with his capital mitigation team. The outline mentions positron emission tomography and magnetic resonance imaging brain scans that the petitioner underwent while in custody, and Smith testified that the scans showed "abnormalities" that could be attributed to potential exposure to lead paint or poor prenatal care. Smith acknowledged, however, that, even with those scans, "a very qualified expert may say that the abnormality has no . . . effect on impulse control [or] cognitive learning . . . ." When asked whether the items contained in the mitigation outline were ever evaluated in the context of forming a mental disease or defect defense, Smith responded that he "always evaluate[s] information in that context" and then "rank[s]" potential defenses. Smith stated that, without other defenses such as reasonable doubt, being wrongly accused, or an alibi, "if death had remained on the table and we were going to go to trial . . . then certainly the mental disease or defect . . . would have simmered to the top." Smith further testified that, even "after the testing that was done and all of the mitigation avenues [were] explored," it was his and Lorenzen's "professional opinion that, if we could get the death penalty off the table, legally, that would be the best route on behalf of [the petitioner], but the actual decision was made by [the petitioner], not by us."

The petitioner additionally claims that counsel rendered deficient performance by "failing to advise the petitioner of [the possibility of a mental disease or defect] defense before allowing him to plead guilty." The petitioner testified that counsel "might have . . . mentioned [the defense] in passing, but we never sat down and discussed it as . . . a strategy" and that counsel never discussed the elements of the mental disease or defect defense with him. Lorenzen testified that he "did cover the matter" of why the defense was "not a serious consideration" and kept the petitioner apprised of what he believed were the strategies and theories that best served the petitioner's interests. Smith testified similarly that he kept the petitioner "up to date" with the theories, strategies, and investigations into the case.

In its memorandum of decision, the court concluded that "the petitioner failed to sustain his burden of proving that trial counsel's performance was deficient in failing to investigate and advise the petitioner as to a potential mental disease or defect defense." The court

found that "the petitioner's mental health was investigated, and trial counsel credibly testified that they saw nothing to indicate that the petitioner was incompetent or suffered from a mental disease or defect."

Under the performance prong of the *Strickland-Hill* test, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Diaz* v. *Commissioner of Correction*, supra, 214 Conn. App. 212–13. The petitioner concedes that "legitimate strategy decisions made by trial counsel are all but immune from challenge on appeal." Here, counsel's legitimate strategy, after evaluating the viability of possible defenses, was to negotiate a guilty plea with the state for a sentence of life imprisonment in exchange for removing the possibility that the death penalty would be imposed. Because this represented a sound trial strategy in the circumstances of this case, counseling the petitioner to accept the plea deal did not constitute deficient performance of counsel.

Nevertheless, the petitioner contends that, because he was not "properly informed" about the possible mental disease or defect defense, his counsel provided ineffective assistance resulting in the petitioner's inability to "make informed decisions regarding the objectives of the representation." Yet the petitioner has not provided, nor can we find, legal authority for the premise that counsel is required to fully inform a defendant of a defense that was factually unsupported and never considered as a serious option, except possibly as a last resort, if the state persisted in pursuing the death penalty.

In this regard, we note that the United States Court of Appeals for the Second Circuit, in a case in which a possible defense "had little chance of success" and presented a "high likelihood that the . . . defense . . . would have exposed [the petitioner] to significant additional punishment," concluded that "counsel served adequately during the plea negotiations because he had no duty to disclose the . . . defense under [those] circumstances." *Panuccio* v. *Kelly*, 927 F.2d 106, 109–10 (2d Cir. 1991); see also *Jamison* v. *Senkowski*, 204 F. Supp. 2d 610, 613 (S.D.N.Y. 2002) (representation does not fall below objective standard of reasonableness when counsel fails to inform petitioner of defense that is not, in fact, viable). Here, there was no duty to inform the petitioner of the possible mental disease or defect defense because it was not established as a viable defense in the circumstances of his case. The court determined that "trial counsel credibly testified that they saw nothing to indicate that the petitioner was incompetent or suffered from a mental disease or

defect." This court will not revisit that credibility determination on appeal. See, e.g., *Barlow* v. *Commissioner of Correction*, 343 Conn. 347, 368, 273 A.3d 380 (2022) ("we will not second-guess the habeas court's credibility determination").

In light of the foregoing, we conclude that counsel did not render deficient performance in failing to investigate and inform the petitioner of a potential mental disease or defect defense.

## II

The petitioner's last claim is that the court abused its discretion by sustaining an objection by the respondent, the Commissioner of Correction, during the petitioner's testimony, which effectively prevented the petitioner from testifying that he would have rejected the plea agreement and insisted on going to trial if his counsel had more fully informed him of the possibility of raising a mental disease or defect defense. The petitioner claims that this evidentiary ruling was harmful because it left him without a way to establish prejudice, the second prong of the *Strickland-Hill* test, with respect to his ineffective assistance of counsel claim concerning that defense.

We need not reach this claim in light of our conclusion in part I B of this opinion. This court has repeatedly explained that a court may resolve ineffective assistance of counsel claims on either the performance prong or the prejudice prong. See, e.g., *Soto* v. *Commissioner of Correction*, supra, 215 Conn. App. 120. Because we have determined that the habeas court properly concluded that the petitioner's ineffective assistance of counsel claim failed under the performance prong of the *Strickland-Hill* test, we need not reach the petitioner's evidentiary claim as it relates to the prejudice prong of that test. See, e.g., *Quint* v. *Commissioner of Correction*, 211 Conn. App. 27, 36 n.7, 271 A.3d 681 ("[i]n light of our determination that the petitioner failed to establish that [counsel's] performance was deficient, we need not address the prejudice prong"), cert. denied, 343 Conn. 922, 275 A.3d 211 (2022); *Grover* v. *Commissioner of Correction*, 183 Conn. App. 804, 818 n.7, 194 A.3d 316 ("[w]hen a petitioner has failed to meet the performance prong of *Strickland*, we need not reach the issue of prejudice" (internal quotation marks omitted)), cert. denied, 330 Conn. 933, 194 A.3d 1196 (2018).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Subsequent to the petitioner's conviction of capital felony, our Supreme Court abolished the death penalty in *State* v. *Santiago*, 318 Conn. 1, 139–40, 122 A.3d 1 (2015).

[2] In accordance with our policy of protecting the privacy interests of the victims of sexual assault, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[3] Section 53a-54b was amended by No. 12-5, § 1, of the 2012 Public Acts to substitute "murder with special circumstances" for "capital felony." See

*State* v. *McCleese*, 333 Conn. 378, 425 n.24, 215 A.3d 1154 (2019). We refer to § 53a-54b as capital felony because that is the nomenclature employed by the parties and the habeas court. All references to § 53a-54b in this opinion are to the 2007 revision of the statute.

[4] The petitioner had been charged in a separate docket with attempt to commit escape from custody in 2011. The petitioner did not challenge that conviction in the habeas court or on appeal to this court.

[5] The petitioner's amended petition for a writ of habeas corpus additionally alleged a due process violation, claiming that his confession was not made voluntarily, knowingly, or intelligently due to a then existing mental disease or defect. The habeas court rejected the petitioner's claim, finding that "[he had] not prove[d] that he suffered from a mental disease or defect." The petitioner does not contest that ruling on appeal.

[6] For ease of discussion, we refer in this opinion to Lorenzen and Smith together as counsel and individually by name.

[7] In light of this conclusion, we need not consider the petitioner's claim that counsel's performance was deficient. See part II of this opinion.

[8] To demonstrate prejudice under the *Strickland-Hill* test, it is common for petitioners to testify what their course of action would have been in the absence of the purported deficient performance of counsel. See, e.g., *Soto* v. *Commissioner of Correction*, supra, 215 Conn. App. 123 (petitioner testified regarding how his actions would have differed if he had received effective assistance of counsel); *Rogers* v. *Commissioner of Correction*, 194 Conn. App. 339, 348, 221 A.3d 81 (2019) (same); *Kellman* v. *Commissioner of Correction*, 178 Conn. App. 63, 73, 174 A.3d 206 (2017) (same).

The record reflects that the petitioner never testified as to what his course of action would have been in the absence of the purported deficient performance. When the petitioner was asked during the habeas trial what his course of action would have been "had [his] attorneys moved to suppress [his] statement at any point prior to [his] guilty plea," the court sustained the objection by counsel for the respondent, the Commissioner of Correction, on the grounds that the question called for speculation and that it was a compound question. The petitioner has not challenged that evidentiary ruling in this appeal.

————————————————